UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NATHANIEL JONES,                               :

                          Petitioner,          :         08 Civ. 5793 (RJH) (GWG)

       -against-                            :         REPORT AND
                                                  RECOMMENDATION
SUPERINTENDENT LUIS R. MARSHALL,      :

                        Respondent.        :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Nathaniel Jones, proceeding pro se, brings this petition seeking a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 following his conviction in state court of burglary in the second

degree, attempted burglary in the second degree, and possession of burglar's tools.  For the

reasons stated below, his petition should be denied.

I.      BACKGROUND

      A.     Trial

      At Jones's trial, Samuel Campiformio testified that in January 2004 he lived in an

apartment on the seventh floor of a building owned by his grandparents, Paul and Vera Mathews,

at 54 Stone Street in Manhattan.  See Trial Transcript, filed June 18, 2010 (Docket # 14) ("Tr.")

(Campiformio: Tr. 38-39, 49).  The Mathews lived in an apartment on the sixth floor of the

building during the work week and that they spent the weekends in Long Island.  (See

Campiformio: Tr. 38-39).  Paul Mathews used part of his apartment as an office.  (See

Campiformio: Tr. 43-44, 52).  The remainder of the building was vacant, but Campiformio, who

worked for his grandfather, had a key to the Mathews' apartment.  (See Campiformio: Tr. 40,

43).

On January 24, 2004, Campiformio left his apartment and noticed that the control panel in the building's elevator, which had been bolted to the wall earlier that day, was ripped off the wall.  (See Campiformio: Tr. 40-43, 89).  Campiformio and his friend, Benjamin Perri, who had been with Campiformio in his apartment, observed that the door to the Mathews' apartment was open.  (See Campiformio: Tr. 40-41, 43-44; Perri: Tr. 107, 112).  Campiformio and Perri entered the apartment and heard sounds from the television in the back room.  Since the Mathews were away for the weekend, the men became suspicious.  They testified that they left the Mathews' apartment and returned with a baseball bat and part of a heating pipe.  (See Campiformio: Tr. 44-45; Perri: Tr. 112-13).  Campiformio and Perri re-entered the apartment and noticed that there was food on the table, several closet doors were open, and items had been taken from the closets and thrown onto the floor.  (See Campiformio: Tr. 45, 51; Perri: Tr. 113).  Believing someone had been in the apartment and already left, Campiformio turned off the television.  (See Campiformio: Tr. 51-52).  As the men were leaving the area of the apartment where the Mathews' bedroom and bathroom were located, they noticed a figure standing behind a closet door in the portion of the apartment used as an office.  (See Campiformio: Tr. 50-55).  Campiformio shouted "who is there, come out," looked behind the door, and saw Jones standing there.  (Campiformio: Tr. 52-54, 55; Perri: Tr. 115-17, 119).  Jones said that he was "looking for a place to sleep" and that he "didn't take anything."  (Campiformio: Tr. 57, 80, 85).  Campiformio told him to leave, and as he followed Jones out he asked him for his name.  Jones responded, "Nate."  (Campiformio: Tr. 58, 83; Perri: Tr. 116).  Campiformio watched Jones leave the building.  (See Campiformio: Tr. 86).

As Campiformio was planning to leave the apartment building shortly thereafter, he left the front door of the building unlocked and went upstairs to talk with Perri.  (See Campiformio:

Tr. 59-60).  A few minutes later, on his way out of the building, he saw that Jones had returned to the lobby.  Campiformio told Jones again to leave and he did so.  (See Campiformio: Tr. 61-62).  Campiformio then left the apartment building and went across the street to McRoberts Protective Agency where he told Maria Rodriguez, the security guard on duty, what had happened and asked her to watch the building.  (See Campiformio: Tr. 46, 60-61, 63; Rodriguez: Tr. 123, 129-30).  Rodriguez testified that she proceeded to call 911 and repeated the information that she had been given by Campiformio.  (See Rodriguez: Tr. 132, 134).

Campiformio and Rodriguez testified that they then observed Jones return to Campiformio's apartment building where he "[m]ess[ed] with the lock" and tried to remove the plexiglass from the front door.  Rodriguez again called 911 to report the activity.  (See Campiformio: Tr. 64-65; Rodriguez: Tr. 133, 136-37, 140, 145-46).  At this point, police officers George Liropoulos and Eddy Perez arrived at the building where they saw Jones removing the plexiglass.  (See Campiformio: Tr. 65-66; Perri: Tr. 122; Rodriguez: Tr. 133, 136; Liropoulos: Tr. 174, 176, 177-79, 196, 211).  The officers arrested Jones and searched his bag, from which they recovered multiple bars of soap, three CDs, a "[t]orx screwdriver," a ratchet set, and pliers.  Campiformio testified that the soap and one of the CDs had been in the Mathews's apartment prior to the burglary.  (See Campiformio: Tr. 67-68, 71-74; Liropoulos: Tr. 183, 185-87, 199).

Jones testified in his defense at trial.  He testified that on January 24, 2004, he left his home in Staten Island in the morning to visit his cousin who lived in the Bronx.  (See Jones: Tr. 221, 233).  After discovering his cousin was not home, Jones traveled back through Manhattan towards the Staten Island ferry.  (See Jones: Tr. 221, 234-35).  At approximately 1:00 p.m., he went to Fulton Street in Manhattan where he bought soap, CDs, a screwdriver, needle-nosed pliers, and a ratchet for his tool collection.  (See Jones: Tr. 221-23, 236-37, 228-29, 239, 252).

3

Jones then walked toward South Ferry on Willams Street.  (See Jones: Tr. 242).  At the corner of Williams Street and Hanover Square he heard a police siren.  Police officers told him to stop, and he was handcuffed and put into a police car.  (See Jones: Tr. 224-26, 242-44).  As Jones was being arrested, he saw a man run out of a building and tell the officers: "That is him."  (See Jones: Tr. 243-44).  Jones denied removing plexiglass from the front door of the building, denied taking the boxes of soap and CDs from the Mathews' apartment, and stated that he had never been inside 54 Stone Street.  (See Jones: Tr. 225-26, 240-41, 254).  Jones testified that he had previously been convicted of two theft-related felonies.  (Jones: Tr. 230, 241).

The jury found Jones guilty of second-degree burglary, attempted second-degree burglary, and possession of burglar's tools.  (Tr. 354-55).

B.      Section 330.30 Motion and Sentence

On October 21, 2004, the day before his scheduled sentence, Jones's counsel moved to set aside the verdict pursuant to N.Y. C.P.L. § 330.30 on the grounds that the People had failed to prove that the apartment Jones entered was a "dwelling" under N.Y. Penal Law § 140.00, that the trial court's charge as to the definition of "dwelling" was "confusing," that the People had failed to prove that Jones intended to commit a crime within the apartment, and that the People had failed to prove Jones's intent to commit a crime relating to the charge of attempted burglary. See Affidavit in Support of CPL 330 Motion to Set Aside the Verdict, dated Oct. 21, 2004 (annexed as Ex. A to Declaration in Opposition to the Amended Petition for a Writ of Habeas Corpus, filed June 18, 2010 (Docket # 13) ("Resp. Decl.")) ("330 Motion") at 13-20; 10/22/04 Sentencing: Tr. 1.  On October 22, 2004, the court adjudicated Jones a persistent violent felony offender and sentenced Jones to 16 years to life for the burglary count, 12 years to life for the attempted burglary count, and one year for the possession of burglar's tools, with the sentences

4

to run concurrently.  (See 10/22/04 Sentencing: Tr. 2-3; 1/14/05 Sentencing: Tr. 13-14).

The People filed a response opposing Jones's section 330 motion on December 17, 2004.

See Response to Defendant's Motion to Set Aside the Verdict Pursuant to CPL 330, dated Dec.

17, 2004 (annexed as Ex. B to Resp. Decl.).  On January 14, 2005, the court denied the motion.

The court found Jones's arguments lacked merit and held that the "[e]vidence that the building

was a dwelling was legally sufficient to support the burglary conviction."  Decision and Order,

dated Jan. 14, 2005 (annexed as Ex. C to Resp. Decl.).

     C.    State Court Appeals

     1.    Direct Appeal

In September 2006, Jones filed a direct appeal through a new attorney raising the

following issues: (1) the evidence was legally insufficient to support the conviction because the

People failed to prove that the building Jones entered was a dwelling and because the People

failed to prove that Jones intended to commit a crime upon entering the premises; (2) Jones was

denied his right to a fair trial because the prosecutor and the court referred to the building as a

"dwelling" and a "home" during voir dire; and (3) Jones was denied his right to a fair trial

because the trial court's jury instruction on the definition of "dwelling" was misleading.  See

Brief on Appeal for Defendant-Appellant (annexed as Ex. D to Resp. Decl.) ("Def. Brief") at 11-

22.

On April 12, 2007, the Appellate Division, First Department affirmed Jones's

conviction.  People v. Jones, 39 A.D.3d 312, 312 (1st Dep't 2007).  The court rejected Jones's

legal sufficiency claims, finding that because Jones "did not make the specific arguments before

the trial court that he raise[d] on appeal, his present challenges to the legal sufficiency of the

evidence [were] unpreserved."  Id.  The court continued:

5

> Were we to review these claims, we would find that the verdict was based on
> legally sufficient evidence. Although the occupants of the burglarized apartment
> did not testify, there was sufficient evidence, including a videotape of the scene
> and testimony from the occupants' grandson, who was familiar with his
> grandparents' living arrangements, to establish that the apartment was "usually
> occupied by a person lodging therein at night," and thus a "dwelling" under Penal
> Law § 140.00(3). The fact that defendant was found in a portion of the apartment
> used by the occupants as a home office is irrelevant to defendant's criminal
> liability.

Id. (quoting N.Y. Penal Law § 140.00(3)).

Plaintiff sought leave to appeal the decision to the Court of Appeals on the three grounds

raised in his appellate brief.  See Letter from William L. Ostar to New York State Court of

Appeals, dated Apr. 24, 2007 (annexed as Ex. G to Resp. Decl.) ("Ltr. to Court of Appeals").

The Court of Appeals denied leave on June 21, 2007.  See People v. Jones, 9 N.Y.3d 846 (2007).

### 2.    Section 440.10 Motion

On September 20, 2007, Jones filed a pro se motion pursuant to New York Criminal

Procedure Law § 440.10.  See Notice of Motion, dated Sept. 20, 2007 (annexed as Ex. I to Resp.

Decl.) ("440 Motion").  Jones's memorandum of law in support of this motion listed three bases

for the 440 Motion: (1) his trial counsel rendered ineffective assistance; (2) the evidence was

legally insufficient because the People failed to prove the "[p]rospective [sic] [o]wnership [o]f

54 Stone Street," that the building he entered was a "dwelling," and that Jones intended to

commit a crime upon entering the premises; and (3) his sentence as a persistent felony offender

was excessive and miscalculated.  See 440 Motion, Memorandum of Law at 1-18.  The People

filed an affirmation opposing the 440 Motion with an affidavit of service dated November 1,

2007.  See Affirmation in Opposition to Defendant's Motion to Vacate Judgment of Conviction

Pursuant to CPL §§ 440.10 and 440.30 (annexed as Ex. J to Resp. Decl.).

On November 15, 2007, the trial court denied Jones's motion.  Addressing Jones's

ineffective assistance of counsel claim, the court held that Jones had "failed to demonstrate with any specificity how defense counsel's performance was deficient or how he was deprived of meaningful representation."  Decision and Order, dated Nov. 15, 2007 (annexed as Ex. K to Resp. Decl.) ("Nov. 15, 2007 Order") at 1.  The court noted that Jones had made only "a generalized claim that he received ineffective assistance because defense counsel refused to assist him and failed to ask 'significant questions' at trial."  Id. at 2.  The Court went on to note that Jones's "disagreement or dissatisfaction with defense counsel's strategy or tactic alone is not sufficient to raise a legitimate claim of ineffective assistance of counsel."  Id. (citation omitted).  Next, the court rejected Jones's legal sufficiency claim, stating that Jones "raised the same argument in his direct appeal and in his earlier CPL § 330 motion.  In both instances, the court found the guilty verdict was based on legally sufficient evidence.  The complaining witness testified at trial that the building belonged to his grandfather, and that [he] . . . lived there at the time of the robbery."  Id.  Accordingly, the court held that the "[e]vidence at trial clearly showed [Jones] unlawfully entered the building, which was a 'dwelling,' as defined by [Penal Law] § 140.25(2)."  Id.  Finally, the court held that Jones's "sentence was correctly calculated."  Id.  The court found that Jones was properly sentenced as a persistent violent felony offender because he had previously been convicted of two violent felonies and that his 16 years to life sentence was the minimum sentence authorized by law.  See id.  Jones did not seek leave to appeal the denial of his 440 Motion.

     D.    The Instant Petition

    On June 27, 2008, Jones timely filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed June 27, 2008 (Docket # 1) ("Pet.").  At the direction of the court,

see Order, filed June 27, 2008 (Docket # 2), Jones filed an amended petition on August 21, 2008,

see Amended Habeas Corpus Application, filed Aug. 21, 2008 (Docket # 4) ("Am. Pet.").  In the

petition, Jones raises thirteen "issues."  Because many are duplicative, we have grouped them

into the following grounds for relief: (1) the evidence was legally insufficient to support his

conviction because a) the testimony that the apartment was a "dwelling" was based on hearsay

and was otherwise insufficient, and b) the People did not establish that Jones caused the property

damage to the apartment building elevator (Issues ## 1, 2, 3); (2) the trial court improperly

admitted the testimony of Campiformio regarding ownership of the property retrieved from

Jones's bag (Issues ## 4, 5); (3) ineffective assistance of trial counsel (Issues ## 6, 8); (4)

Jones's adjudication as a persistent violent felony offender was unconstitutional (Issue # 11); and

(5) the trial court erred in denying Jones's 330 and 440 Motions (Issues ## 7, 11, 12, 13).  See

Am. Pet. at 3-5.[1]

The case was referred to the undersigned on March 8, 2010.  See Order of Reference to a

Magistrate Judge, filed Mar. 8, 2010 (Docket # 8).  On June 8, 2010, shortly before the due date

for the respondent's opposition to the petition, Jones filed a motion for an "evidentiary hearing,"

in which he listed 13 new claims of ineffective assistance of counsel.  See Notice of Motion,

filed June 8, 2010 (Docket # 11) ("Motion for Hearing").  Respondent responded to this motion

in a letter to the Court dated June 10, 2010.  See Letter from Priscilla Steward to the Honorable

Gabriel W. Gorenstein, dated June 10, 2010 (Docket # 15).  Respondent thereafter filed papers in

---

[1]   Jones identifies Issue # 9 as "whether the respondents brief on direct appeal was sufficiently meritive [sic] on the basis of a one-point opposition" and Issue # 10 as whether the Appellate Division's decision was "based on sufficient determinations."  See Am. Pet. at 4. These claims are so generalized and conclusory that they cannot provide a basis for granting habeas relief.  Accordingly, we do not consider them further.

8

opposition to the petition, <u>see</u> Respondent's Memorandum of Law in Opposition to the Amended

Petition for a Writ of Habeas Corpus, filed June 18, 2010 (Docket # 12) ("Resp. Mem."); Resp.

Decl.; Tr., and Jones filed a response, <u>see</u> Answer and Traverse, filed Oct. 8, 2010 (Docket # 16)

("Answer").

II.      <u>APPLICABLE LAW</u>

    A.      <u>The Legal Standard for Petitions Brought Pursuant to 28 U.S.C. § 2254</u>

    A petition for a writ of habeas corpus may not be granted with respect to any claim that

has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

    For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it

must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the

substance of the claim advanced, rather than on a procedural, or other, ground."  <u>Sellan v.</u>

<u>Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in

its decision to indicate that the claims were decided on anything but substantive grounds," a state

court decision will be considered to be "adjudicated on the merits" even if it fails to mention the

federal claim and no relevant federal case law is cited.  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94

(2d Cir. 2001) (internal quotation marks omitted); <u>accord</u> <u>Rosa v. McCray</u>, 396 F.3d 210, 220

(2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal

claim on the merits, regardless of whether the court has alluded to federal law in its decision."),

<u>cert. denied</u>, 546 U.S. 889 (2005).  Moreover, a state court's "determination of a factual issue" is

"presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable" – a standard that "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted). The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question." Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

10

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law." Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (internal quotation marks and citation omitted). Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Id. at 106-07 (citation omitted). Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer to the question presented" in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.

B.    Exhaustion

"Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1)(A). The Supreme Court has held:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005). Thus, a petitioner is required to have presented each claim to all available levels of the state courts. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)") (internal quotation marks and citations omitted).

11

C.     Procedural Bar

Even where a claim has been exhausted, it may not be reviewed if the claim has been

rejected based on a state procedural rule that constitutes an adequate and independent ground for

the decision.  The Second Circuit has summarized the law governing habeas review of claims

dismissed under state procedural law as follows:

> This court is generally procedurally barred from considering a ruling that
> "fairly appear[s] to rest primarily on state procedural law." Jimenez v. Walker,
> 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).  Even where the state court
> has ruled on the merits of a federal claim "in the alternative," federal habeas
> review is foreclosed where the state court has also expressly relied on the
> petitioner's procedural default.  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005)
> (citation omitted).  To bar federal habeas review, however, the state court's
> decision must rest not only on an independent procedural bar under state law, but
> also on one that is "adequate to support the judgment." Jimenez, 458 F.3d at 138.
>
> A state procedural bar is "adequate" if it "is firmly established and
> regularly followed by the state in question" in the specific circumstances
> presented in the instant case.  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir.
> 2006) (citation omitted).  The "guideposts" for analyzing the issue of adequacy,
> articulated in the context of a procedural default occurring at trial, are:
>
>> (1) whether the alleged procedural violation was actually relied on
>> in the trial court, and whether perfect compliance with the state
>> rule would have changed the trial court's decision; (2) whether
>> state caselaw indicated that compliance with the rule was
>> demanded in the specific circumstances presented; and (3) whether
>> petitioner had "substantially complied" with the rule given "the
>> realities of trial," and, therefore, whether demanding perfect
>> compliance with the rule would serve a legitimate governmental
>> interest.
>
> Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted).  The Cotto
> guideposts also apply to testing the adequacy of a procedural default raised in a
> state collateral proceeding.  See, e.g., Clark v. Perez, 450 F. Supp. 2d 396, 426
> (S.D.N.Y. 2006).  Because of comity concerns, a decision that a state procedural
> rule is inadequate should not be made "lightly or without clear support in state
> law." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted).

Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007) (alteration in original), cert. denied, 552

U.S. 1150 (2008).  The Second Circuit has cautioned, however, that "the <u>Cotto</u> factors are not a three-prong test: they are guideposts to aid inquiry . . . there is no need to force square pegs into round holes."  <u>Clark v. Perez</u>, 510 F.3d 382, 391 (2d Cir.), <u>cert. denied</u>, 129 S. Ct. 130 (2008).

If a claim is procedurally barred, a petitioner may obtain review of the claim only if he demonstrates "cause and prejudice for the procedural default," or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense."  <u>Dretke v. Haley</u>, 541 U.S. 386, 393 (2004) (internal quotation marks and citations omitted); <u>accord</u> <u>Murden</u>, 497 F.3d at 194; <u>Doe v. Menefee</u>, 391 F.3d 147, 160-63 (2d Cir. 2004), <u>cert. denied</u>, 546 U.S. 961 (2005).

III.   <u>DISCUSSION</u>

A.   <u>Sufficiency of Evidence Supporting Conviction</u>

Jones argues that his conviction was not supported by legally sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 6 of the New York Constitution.  <u>See</u> Am. Pet. at 3 (Issues ## 1, 2, 3).  While Jones raised certain legal sufficiency claims in his brief on appeal, <u>see</u> Def. Brief at 11-15, 18-21, the Appellate Division ruled that these claims were unpreserved for appellate review, <u>see</u> <u>Jones</u>, 39 A.D.3d at 312.  The court held that because Jones "did not make the specific arguments before the trial court that he raise[d] on appeal, his present challenges to the legal sufficiency of the evidence [were] unpreserved . . . ."  <u>Id.</u> (citation omitted).

It is well established "that New York's contemporaneous objection requirement is an independent and adequate state procedural bar."  <u>Gomez v. Brown</u>, 655 F. Supp. 2d 332, 355 (S.D.N.Y. 2009) (citing <u>Garcia v. Lewis</u>, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."))

13

(additional citations omitted).  Jones argues that his claims are not procedurally barred because he raised them in his 330 Motion.  See Answer at 5.  However, a petitioner "may not present a legal insufficiency argument through a New York Crim. Proc. L. [§ 330.30] motion to set aside the verdict unless it has been properly preserved for review during the trial by renewing his motion to dismiss at the close of all the evidence."  Cotton v. Superintendent, Wende Corr. Facility, 2010 WL 3516577, at *7 (W.D.N.Y. Sept. 3, 2010) (citing cases).

It is not necessary to rest on the procedural bar, however, because Jones's insufficiency claim fails on the merits.  The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . ."  In re Winship, 397 U.S. 358, 364 (1970).  A court reviewing a sufficiency of the evidence claim must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original) (citation omitted).  To prevail, the petitioner must show that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324; accord Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).

In conducting this review, "assessments of the weight of the evidence or the credibility of witnesses are for the jury," and thus a habeas court will "defer to the jury's assessments of both of these issues."  Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (citing cases); accord Fagon v. Bara, 717 F. Supp. 976, 979-80 (E.D.N.Y. 1989) ("[T]his court is not free to make credibility judgments about the testimony . . . or to weigh conflicting testimony.") (citing cases). "[A]ll possible inferences that may be drawn from the evidence must be construed in the

14

prosecution's favor." Maldonado, 86 F.3d at 35 (citing cases).  Where the record supports
competing inferences, the habeas court must "'presume – even if it does not affirmatively appear
in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and
must defer to that resolution.'" Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson,
443 U.S. at 326).  A habeas petitioner challenging the sufficiency of the evidence underlying his
conviction, therefore, bears a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d
Cir.) (internal quotation marks and citations omitted), cert. denied, 515 U.S. 1136 (1995).

　　　In considering the sufficiency of the evidence in support of a state conviction, a federal
habeas court "'must look to state law to determine the elements of the crime.'" Fama v. Comm'r
of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (quoting Quartararo v. Hanslmaier, 186 F.3d
91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)).  Under New York law,  "[a] person is
guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a
building with intent to commit a crime therein, and when . . . [t]he building is a dwelling."  N.Y.
Penal Law § 140.25.  A dwelling is "a building which is usually occupied by a person lodging
therein at night."  Id. § 140.00(3).  In determining whether a "building is usually occupied by a
person lodging therein at night . . . courts must look to the nature of the structure and determine
whether it was normal and ordinary that it was used as a place for overnight lodging and had the
customary indicia of a residence and its character or attributes."  People v. Barney, 99 N.Y.2d
367, 372 (2003) (internal quotation marks and citations omitted).  Under New York Penal Law
§ 110.00, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a
crime, he engages in conduct which tends to effect the commission of such crime."  Id. § 110.00.
The crime of possession of burglar's tools requires a showing that the defendant "possesses any
tool, instrument or other article adapted, designed or commonly used for committing or

facilitating offenses involving forcible entry into premises . . . under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character." Id. § 140.35.

Here, a rational jury could have found that the apartment building Jones burglarized was a "dwelling" under N.Y. Penal Law § 140. Campiformio's testimony was sufficient to establish that the Mathews lived in the apartment during the work week and thus that the apartment was usually occupied at night. (See Campiformio: Tr. 38-39). There was no need to call Matthews as a witness, let alone require that he testify that he owned the property at issue. All that was required was to provide evidence that the apartment was "usually occupied by a person lodging therein at night." N.Y. Penal Law § 140.00(3). Moreover, there were obvious indicia that this was a residence in light of the presence of a "bed." (See Campiformio: Tr. 51).

Furthermore, a rational jury could have concluded that Jones caused property damage by removing the electric panel in the elevator. Campiformio testified to the damage to the panel and stated that the panel had not been tampered with when he left the building in the morning of January 24, 2004. (See Campiformio: Tr. 40-43). Finally, a rational jury could have used the evidence of a stolen CD, soap, and burglar's tools found in Jones's bag to conclude that Jones entered the apartment with "intent to commit a crime" – specifically, the crime of theft.

B.    Improper Admission of Testimony by the Trial Court

Jones argues that the trial court improperly admitted testimony in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 6 of the New York Constitution. See Am. Pet. at 4 (Issues ## 4, 5). Specifically, Jones asserts that the trial court improperly admitted the testimony of Campiformio regarding ownership of the property retrieved from Jones's bag. See id. As the respondent notes, this claim was raised for

the first time in Jones's federal habeas petition and is thus unexhausted.  <u>See</u> Resp. Mem. at 29.

Jones asserts in his answer that the claim is exhausted because it was raised in his 330 Motion.

<u>See</u> Answer at 9.  This is not at all evident, <u>see</u> 330 Motion, but in any event would not matter

because Jones did not pursue this claim in his application for leave to appeal to the Court of

Appeals, <u>see</u> Ltr. to Court of Appeals; Def. Brief; <u>see, e.g.</u>, <u>Brewer v. Lape</u>, 2010 WL 3565176,

at *14, n.11 (S.D.N.Y. June 11, 2010) (rulings made in a section 330 motion are "subsumed in

the final judgment" and thus the "failure to pursue [such a] claim on [a] leave application still

represents a failure to exhaust") (citations omitted), <u>adopted by</u> 2010 WL 3582888 (S.D.N.Y.

Sept. 13, 2010).

   Because Jones has already taken his one direct appeal, this claim is procedurally barred

from consideration in a collateral attack on his conviction.  <u>See</u> <u>Jimenez</u>, 458 F.3d at 149.

("[Petitioner's] claim is now exhausted because state remedies are no longer available.

[Petitioner] has already taken his one direct appeal, and this claim is procedurally barred from

consideration in a collateral attack on his conviction. . . . [Therefore, petitioner] has procedurally

defaulted his . . . claim.") (citations omitted).  In such a situation, the unexhausted claim will be

"deemed exhausted . . . ."  <u>St. Helen v. Senkowski</u>, 374 F.3d 181, 183 (2d Cir. 2004) (citing <u>Grey</u>

<u>v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991)), <u>cert.</u> <u>denied</u>, 543 U.S. 1058 (2005); <u>accord</u> <u>Coleman</u>

<u>v. Thompson</u>, 501 U.S. 722, 735 n.1.  "However, the procedural bar that gives rise to exhaustion

provides an independent and adequate state-law ground for the conviction and sentence, and thus

prevents federal habeas corpus review of the defaulted claim . . . ."  <u>Gray v. Netherland</u>, 518 U.S.

152, 162 (1996).  "In the case of procedural default (including where an unexhausted claim no

longer can proceed in state court), we may reach the merits of the claim 'only if the defendant

can first demonstrate either cause and actual prejudice, or that he is actually innocent.'"  <u>St.</u>

17

Helen, 374 F.3d at 184 (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).  Plaintiff has not shown actual innocence or that there is any cause for his default.  The Court notes that the failure of counsel to raise this claim in the letter to the Court of Appeals seeking leave to appeal cannot constitute cause for this default because, among other reasons, there is no right to counsel for discretionary appeals.  See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (failure of counsel to seek leave to appeal cannot constitute "cause" for a procedural default).

     C.     Ineffective Assistance of Counsel

Jones contends that his trial counsel was ineffective.  See Am. Pet. at 4 (Issues ## 6, 8).[2] Jones raised this claim in a very generalized form in his section 440 Motion, see 440 Motion, Memorandum of Law at 1-10, but he did not seek leave to appeal the New York Supreme Court's denial of this motion.  Because he has not presented this claim to the highest state court from which a decision could be had, the claim is unexhausted.  See Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) ("by failing to appeal the denial of his Section 440.10 motion, [petitioner] has not fulfilled [the exhaustion] requirement with respect to his ineffective assistance claim").

Jones's failure to exhaust means that the claim cannot be reviewed here.  Jones cannot now return to the state courts to exhaust this claim because it is too late to seek leave to appeal. See N.Y. C.P.L. §§ 460.10(4)(a), 460.30 (deadline for leave to appeal may be extended to at most 1 year and 30 days).  In this case, Jones's 440 Motion was denied on November 15, 2007, more than three years ago.  His claim is therefore procedurally barred in New York State courts. See, e.g., Rodriguez v. Ercole, 2008 WL 4701043, at *9 (S.D.N.Y. Oct. 24, 2008) ("[s]ince the petitioner can no longer move timely for permission to appeal from the denial of his CPL §

---

    [2]  We discuss only the claim raised in the petition.  In section III.F below we discuss Jones's apparent attempt to add additional claims of ineffective assistance of counsel.

440.10 motion, his . . . claim is procedurally barred") (citation omitted); <u>Edmee v. Coxsackie</u>

<u>Corr. Facility</u>, 2009 WL 3318790, at *2 (E.D.N.Y. Oct. 14, 2009) ("The failure to timely appeal

the denial of petitioner's § 440.10 motion means that the claim is not only unexhausted, but

procedurally barred under state law because it is too late to take that appeal and a state court

would dismiss it on that ground.") (citations omitted).  Nor could Jones raise this issue in a new

section 440.10 motion inasmuch as the claim is record-based (grounded in counsel's alleged

failure to ask "significant questions," Nov. 15, 2007 Order at 2 (internal quotation marks

omitted)), and Jones's failure to raise the issue in the Appellate Division is thus "unjustifiable,"

N.Y. C.P.L. § 440.10(2)(c); <u>see</u> <u>Garcia v. Boucaud</u>, 2010 WL 1875636, at *7 (S.D.N.Y. May 11,

2010) (holding petitioner could not raise the ineffective assistance of counsel claim in a new

section 440.10 motion because the claim was "record-based" and because petitioner's "failure to

raise the issue in the Appellate Division was unjustifiable") (internal quotation marks and

citation omitted).  Accordingly, Jones's claim of  ineffective assistance of counsel is

procedurally barred.

   D. <u>Constitutionality of Jones's Adjudication as a Persistent Violent Felony Offender</u>

   Jones contends that his adjudication as a persistent violent felony offender is

unconstitutional.  <u>See</u> Am. Pet. at 4 (Issue # 11).  He argues that the trial court should have

considered the validity of his sentence "as a matter of law, with respect to [his] violent felony's

offender sentence and conviction."  <u>See id.</u>  While Jones raised this argument in his 440 Motion,

<u>see</u> 440 Motion, Memorandum of Law at 14-18, he did not seek leave to appeal the trial court's

denial of this motion.  Consequently, Jones has not "fairly presented" his claim to the "highest

state court from which a decision [could] be had."  <u>Daye v. Attorney Gen. of N.Y.</u>, 696 F.2d 186,

190 n.3, 191 (2d Cir. 1982).  For the same reasons stated in the previous section, this claim must

be deemed exhausted but procedurally barred.

      E.      <u>The Denial of Jones's 330 and 440 Motions</u>

Jones next claims that the trial court erred in denying his 330 and 440 Motions.  <u>See</u> Am.

Pet. at 4-5 (Issues ## 7, 11, 12, 13).  As already described, however, the claims made in these

motions either fail on the merits or are procedurally barred.  Accordingly, it is not necessary to

address these claims further.

      F.      <u>Petitioner's Motion for an Evidentiary Hearing</u>

Finally, Jones moves for an "evidentiary hearing" based on 13 new claims of ineffective

assistance counsel.  <u>See</u> Motion for Hearing.  This motion must be denied because none of these

claims was included in Jones's original or amended petitions, <u>see</u> Pet.; Am. Pet., and Jones's

attempt to include them now is untimely.  In addition, Jones has provided no grounds for an

evidentiary hearing.

28 U.S.C. § 2244(d)(1) provides a one-year limitation period for the filing of habeas

corpus petitions.  While section 2244 provides several possible dates from which the one-year

period may begin to run, the applicable date here is "the date on which the judgment became

final by the conclusion of direct review or the expiration of the time for seeking such review."

28 U.S.C. § 2244(d)(1)(A).  Thus, Jones's limitations period began to run 90 days after the Court

of Appeals denied him leave to appeal.  <u>See, e.g.</u>, <u>Pratt v. Greiner</u>, 306 F.3d 1190, 1195 n.1 (2d

Cir. 2002) ("A conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of

the ninety-day period to petition for a writ of <u>certiorari</u> to the United States Supreme Court.")

(citations omitted).  Because leave to appeal was denied on June 21, 2007, <u>see</u> <u>Jones</u>, 9 N.Y.3d

846, the limitations period expired, absent tolling, on September 19, 2008.

28 U.S.C.§ 2244(d)(2), however, allows for tolling of the limitations period for any

period during which "a properly filed application for State post-conviction or other collateral review" is pending.  Because Jones filed a section 440 motion, the time this motion was pending tolls the limitations period.  Jones's 440 Motion was pending from September 20, 2007, <u>see</u> 440 Motion, until November 15, 2007, <u>see</u> Nov. 15, 2007 Order.  Thus, 56 days are added to the limitations period, <u>see, e.g.</u>, <u>Cobado v. Conway</u>, 2008 WL 4239340, at *3 (W.D.N.Y. Sept. 11, 2008 ) (tolling on review of section 440 motion ends when Appellate Division denies leave to appeal), which means Jones's time to file a petition expired on November 14, 2008.

Both Jones's original and amended petitions were filed prior to that date.  <u>See</u> Pet.; Am. Pet.  But Jones's motion for an "evidentiary hearing" is dated May 24, 2010, long after the expiration of his time to file the petition.  Thus, if the request for an evidentiary hearing is construed as an application to file a second amended petition, it is time-barred.  Jones might attempt to overcome this time-bar by seeking to have any second amended petition "relate[] back" to the date of the filing of his original or amended petition under Fed. R. Civ. P. 15(c)(1). To achieve this outcome, however, Jones would have to show the new claims "arose out of the conduct, transaction, or occurrence set out" in his initial petition.  <u>See</u> Fed. R. Civ. P. 15(c)(1)(B).  This he cannot do.  While relation back will be available if  "the original and amended petitions state claims that are tied to a common core of operative facts," <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005), it is not sufficient for the proposed new claim in the habeas petition to simply come from the same "trial, conviction, or sentence," <u>id.</u> (internal quotation marks omitted).  "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the] limitation period would have slim significance."  <u>Id.</u> at 662 (citations omitted).

Jones has not demonstrated "a common core of operative facts" between any of his new

ineffective assistance claims and his original claim of ineffective assistance of counsel.  His amended petition refers to claims of deprivation of  "effective assistance of counsel," Am. Pet. at 4 (Issue # 8), but no such claims are specified and they obviously could not consist of any claims that were not at least set forth in his 440 Motion – the only proceeding in which Jones actually made any such claims.  The claims made in his 440 Motion were, as the trial court noted, general claims of ineffective assistance without any explanation of the particular errors Jones was alleging his counsel may have made, other than a claim that counsel "failed to ask 'significant questions' at trial."  Nov. 15, 2007 Order at 2.

The newly listed claims, by contrast, consist of a host of other complaints about counsel's conduct.  See Motion for Hearing at 4-5.  None of the new ineffective assistance claims have any factual connection to the claim regarding counsel's failure to ask "significant questions."  Thus, the facts supporting the new ineffective assistance claims differ in "time and type" from the facts underlying the claims in the amended petition.  Therefore, "relation back is prohibited under Mayle."  Johnson v. Ercole, 2008 WL 4372649, at *3 (E.D.N.Y. Sept. 22, 2008).  As case law has noted, "a new claim will not relate back to the original claims based on the mere fact that . . . both old and new claims allege ineffective assistance of counsel."  Munoz v. Burge, 2010 WL 3394696, at *5 (E.D.N.Y. Aug. 20, 2010) (citing cases); accord Soto v. Conway, 565 F. Supp. 2d 429, 436-39 (E.D.N.Y. 2008) (ineffective assistance claim as to appellate counsel's failure to appear at oral argument does not relate back to ineffective assistance claim as to appellate counsel's failure to raise a claim for ineffective assistance of trial counsel asserted in original petition); Valerio v. Phillips, 2007 WL 4191817, at *6 (W.D.N.Y. Nov. 21, 2007) (claim of ineffective assistance as to a conflict of interest and plea bargain did not relate back to claims of ineffective assistance of counsel relating to failure to object to

22

admission of evidence and trial rulings and failure to request certain jury instructions).  In sum, because Jones's proposed ineffective assistance claims are barred by the statute of limitations, he cannot amend his petition to include these claims and thus there would be no need for any evidentiary hearing on them.

In any event, 28 U.S.C. § 2254(e)(2) provides that a

court shall not hold an evidentiary hearing unless the applicant shows that --   (A) the claim relies on -- (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Jones makes no such showing here.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, Jones's motion for a hearing (Docket # 11) should be denied and his amended petition for a writ of habeas corpus should be denied.

**<u>PROCEDURE FOR FILING OBJECTIONS TO THIS</u>**
**<u>REPORT AND RECOMMENDATION</u>**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard J. Holwell, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Holwell.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See Thomas v.</u>

<u>Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,</u>

<u>Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).


Dated: January 3, 2011
      New York, New York

                                                  _____
                                                  GABRIEL W. GORENSTEIN
                                                  United States Magistrate Judge

Copies to:

Nathaniel Jones
05-A-0421
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Priscilla Steward
Assistant Attorney General
120 Broadway
New York, NY 10271

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated: December 31, 2010
      New York, New York

                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

Copies to:

Nathaniel Jones
05-A-0421
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Priscilla Steward
Assistant Attorney General
120 Broadway
New York, NY 10271